ANDREW A. MOHER. SBN: 257605
**LAW OFFICES OF ANDREW A. MOHER, APC**
101 California St, Suite 2710
San Francisco, CA 94111
Telephone: 619-269-6204
Facsimile: 619-923-3303
Attorney for Debtor SS Dreambuilders LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| In Re:<br><br>SS Dreambuilders LLC | Case No. 15-43052<br><br>CHAPTER 11<br><br>**MOTION BY DEBTOR-IN-POSSESSION FOR DISMISSAL OF CHAPTER 11 CASE**<br><br>Date: March 8, 2016<br>Time: 1:30 p.m.<br>Place: United States Bankruptcy Court, 1300 Clay St, Room 201, Oakland, CA 94612<br>Judge: Hon. Roger L. Efremsky |

COMES NOW SS Dreambuilders LLC ("Debtor"), Debtor and Debtor-in-Possession herein, and hereby moves this Court for an order dismissing the above referenced case pursuant to Bankruptcy Code §§ 1112(b) and 105(a), and in support of its motion respectfully represents:

## I. STATEMENT OF FACTS

1. The within case was commenced by the filing of a voluntary petition on October 4, 2015 ("The Petition Date"). No trustee has been appointed, and the Debtor is in possession of its estate.

2. The Debtor filed this case on an emergency basis with a foreclosure sale scheduled the following day, and with multiple foreclosures pending in the weeks following the Petition Date.

3. SS Dreambuilders LLC is a real estate development business, founded in February 2010, and 100 percent owned by Chong S. Han, who has been appointed as the responsible individual for the Debtor in this case. (doc #8)

4. In the months leading up to the Petition Date, the Debtor suffered a number of foreclosures on its properties stemming from poor real estate investments, which were exacerbated by the fact that many of the properties were sold during construction, minimizing their value at sale and causing substantial financial loss.

5. The Debtor filed this case with the purpose of selling its remaining properties in order to pay back its creditors, and to avoid the continuing string of foreclosures which threatened the viability of the business.

6. At the outset of the case, the Debtor believed that it had assets that could be liquidated in order to pay its creditors in full and absorb the attendant costs of a chapter 11 proceeding in which the properties could be sold. The Debtor's intent was to sell its properties and continue operating its business after resolving its debt burden.

7. After fully analyzing and obtaining the assets and debts of the Debtor, it has become clear that Debtor's estate does not have sufficient assets to reorganize. Debtor appears to have initially based its estimates of equity on both overly optimistic market values and without accounting for interest and fees accrued since the origination of the original loans (most of which were private and without monthly/annual statements).

8. Furthermore, Debtor's business has been run without a consistent method of record-keeping, leading to substantial difficulties in re-creating accounting records that are

necessary for compliance in a bankruptcy case. Debtor has worked at great length to provide accurate and necessary information but has struggled to do so in some regards due to the lack of foundational information or documents. Debtor's accountant has not been able and/or willing to assist in completing documents in a timely and accurate manner, and Debtor does not have sufficient funds on hand to "re-start" the process with a new accountant.

9. Debtor initially believed that it would realize substantial proceeds from its actions against Buildzig, Inc. Debtor's counsel has discussed the matter with Special Counsel for Debtor and it appears that the prospects of recovery from this action are unclear and unlikely to be resolved in the near future as had been hoped.

10. Debtor's case has reached a stage where it appears that reorganization is not feasible, and that the cost of liquidation likely outweighs the benefit to creditors. Debtor, through counsel, has discussed this dismissal with all unsecured claimants and is optimistic that no unsecured creditors will file opposition to this Motion.

11. As set forth in further detail below, Debtor respectfully submits that dismissal is in the best interest of the estate.

## II. SUMMARY OF ASSETS AND LIABILITIES

Debtor possesses title to thirteen properties ("The Properties"), all in the state of California. Based on the initial information that was provided it appeared that, after resolving several disputed claims and with the anticipated cooperation of several undersecured creditors, Debtor would be able to sell The Properties and realize more than $1 million for the estate, which in concert with Debtor's pending claims against Buildzig, Inc. would be sufficient to pay all creditors of the estate in full. In the process of drafting and analyzing motions to sell The Properties, it has become apparent that 1) some of Debtor's estimates of fair market value were

optimistically high, and 2) Debtor substantially underestimated the amounts of secured claims against the properties, often not including interest/fees for much of the loan. When payoff demands were obtained for The Properties, it became clear that only three of the thirteen properties were likely to generate any actual proceeds from sale. (please see Exhibit "A" – Chart of Value and Liabilities for The Properties and Other Assets). In addition, after reviewing its claims against Buildzig with Special Counsel, Debtor does not anticipate prompt resolution and is not confident that the claims will yield any tangible net benefit after accounting for fees and costs.

Debtor now finds itself in an untenable position. Two motions for relief from stay on one of the underwater properties have already been filed and granted (see doc #67, doc #69), another motion for relief from stay has been filed on the 1068 Cragmont property – also without equity (see doc #94), and Debtor expects a cascade of motions for relief as secured creditors become frustrated with the process and need to defend their claims against other claims on the properties as they accrue interest and fees. Debtor wishes to do what is in the best interest of the estate, and wishes to surrender these properties in an orderly fashion without accruing additional costs and fees that will be detrimental to the junior lienholders and to creditors of its estate.

### III. <u>DISMISSAL IS IN THE BEST INTEREST OF THE ESTATE</u>

The Bankruptcy Court may dismiss a Chapter 11 case "for cause" pursuant to 11 U.S.C. §1112(b). Section 1112(b)(1) provides, in relevant part, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause …" If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court *Mitan v. Duval (In re Mitan)*, 573 F. 3d 237, 247 (6th Cir. 2009)

A motion filed under Section 1112(b) necessitates a two-step analysis: once cause is established, the court must "choose between dismissal or conversion, 'whichever is in the best interest of creditors and the estate'" *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr.E.D.Cal.1993). In evaluating the first part of this two-step inquiry, §1112(b) provides ten factors that may constitute "cause." The factors are:

(1) Continuing loss to or dimunition of the estate and the absence of a reasonable likelihood of rehabilitiation; (2) inability to effectuate a plan; (3) unreasonable delay by the debtor that is prejudicial to creditors; (4) failure to propose a plan under section 1121 of this title within any time fixed by the court; (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan; (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title; (7) inability to effectual substantial consummation of a confirmed plan; (8) material default by debtor with respect to a confirmed plan; (9) termination of a plan by reason of the occurrence of a condition specified in a plan; or (10) nonpayment of any fees or charges required under chapter 123 or title 28. 11 U.S.C. §1112(b).

Here, because of the continuing loss of equity and diminution of the estate, and the fact that selling the properties that do have equity will not generate sufficient proceeds to maintain the solvency of the estate, there is a low probability of successful resolution of this Case, either by plan or by selling all properties. Thus, cause exists for either conversion or dismissal of this case.

The second part of the two-step inquiry requires that the court must "choose between dismissal or conversion, whichever is in the best interest of creditors and the estate. The standard for choosing conversion or dismissal based on the 'best interest of creditors and the estate' implies a balancing test to be applied through case-by-case analysis." *In re Henson*, 289 B.R.

741, 754 (Bankr. N.D. Cal. 2003) Debtor submits that dismissal, rather than conversion, is in the best interest of the estate, for the following reasons:

### A. The Benefit to Unsecured Creditors After Costs of Liquidation Would Be Negligible and Conversion Would Leave the Case Administratively Insolvent.

Debtor has reviewed and analyzed the possibility of conversion to chapter 7 and has concluded that conversion would yield negligible dividends to unsecured claimants. As evidenced by Exhibit "A," there are three parcels of real property that would likely benefit the estate in a chapter 7 proceeding:

1. **7039 Broadway Terrace: $109,955.51 ("Broadway Property")**
2. **20266, 20268, 20276 Concord Ave: $118,477.28 ("Concord Property")**
3. **1805 Estudillo St: $141,000.00 ("Estudillo Property")**

**Total Anticipated Realized Profits from Real Properties: $369,432.79**

These three properties, in an optimal situation, would net $369,432.79 for the estate. But of the three properties, only Broadway has been listed for sale – Estudillo is currently being rented and Concord is being used as a residence by the managing member Ms. Han. The estimated costs of liquidation would be:

1. **Admin Fees (Ch. 11 Legal and Accounting Fees): $125,000**
2. **Chapter 7 Trustee, Trustee Attorney Fees, And Associated Fees: $150,000**

**Total Anticipated Costs of Liquidation: $275,000.00**

These numbers are necessarily estimates at this stage, but are set forth to establish that liquidation would be an extremely difficult and time consuming task in this case. It is likely that after the costs of liquidation, the total pool of proceeds remaining for unsecured creditors would

be around $100,000.00 or less. As set forth below the total of unsecured claims in this case is $3,212,806.44. Furthermore, many of the unsecured claimants are also secured claimants on Debtor's properties and would financially benefit from the prompt dismissal of the case rather than a drawn-out liquidation.

**B. Debtor Anticipates The Unsecured Claimants Will Not Oppose This Motion to Dismiss.**

The claims bar date in Debtor's case passed on February 1, 2016. The filed non-priority unsecured claims are as follows:

| CLAIM NUMBER | CLAIMAINT | AMOUNT CLAIMED |
|---|---|---|
| 3 | Leanne Reiter | $16,600.00 |
| 15 | Daniel Kim, Trustee of the CA Capital Funds for 28 c/o Daniel Kim | $586,311.99 |
| 16 | Daniel Kim, Trustee of the CA Capital Funds for 81 c/o Daniel Kim | $115,511.50 |
| 17 | LGA Services LLC, a Nevada Limited Liability Company, c/o Daniel Kim | $353,295.34 |
| 18 | Daniel Kim, Trustee of the CA Capital Funds for 13 c/o Daniel Kim | $360,339.38 |
| 19 | Daniel Kim, Trustee of the CA Capital Funds for 60, c/o Daniel Kim | $318,243.00 |
| 20 | Daniel Kim, Trustee of the CA Capital Funds for 68, c/o Daniel Kim | $187,318.01 |
| 21 | Daniel Kim, Trustee of the CA Capital Funds for 70, c/o Daniel Kim | $325,075.00 |
| 22 | Daniel Kim, Trustee of CA Capital Funds for 70 c/o Daniel Kim | $371,937.19 |
| 23 | Daniel Kim, Trustee of the CA Capital Funds for 70, c/o Daniel Kim | $271,600.00 |

| 24 | Daniel Kim, Trustee of the CA Capital Funds for 11, c/o Daniel Kim | $248,969.08 |
| 29 | Jeanne Krafft | $35,725 (note: this claim appears to require amendment as it states the claim is partially secured by a foreclosed property). |
| 37 | Economy Trucking Services, Inc. | $21,880.55 |
| | | |

The total amount of unsecured claims is $3,212,806.44. Of this total, $3,138,600.49 (97.69 percent) are filed by Daniel Kim for deficiency judgments on foreclosed properties. If the estate were to realize $100,000 in net proceeds, unsecured creditors would receive a 3.11 percent dividend on their claims. Each of the unsecured claimants, with the exception of Economy Trucking Services, is also a secured creditor in this case and stands at risk of dimunition of their secured claims should the case continue forward.

Furthermore, the Debtor or Trustee would likely object to the claims set forth by Mr. Kim should the case not be dismissed, which would likely result in adversary proceedings or at minimum further costs. Mr. Kim and the Debtor have a long history in which Mr. Kim has benefitted substantially from prior investments on Debtor's properties. Mr. Kim *has personal guarantees* against Ms. Han, the LLC's managing member, on these deficiency claims. Debtor believes that the claims that Mr. Kim has filed may be partially or fully offset by way of agreements Debtor has previously established with Mr. Kim. Debtor believes, at this stage, that the cost of adjudicating this issue exceeds the benefit to the estate, but submits that in a converted case this issue could not be resolved without substantial expense.

Debtor believes that Mr. Kim, Ms. Reiter, Ms. Krafft, and Economy Trucking would benefit overall from dismissal as opposed to conversion, and is optimistic (based on

conversations between Debtor's counsel and Creditor's respective counsel) that all unsecured claimants will file declarations of non-opposition prior to the hearing on this Motion.

### C. **The Detriment to Secured Creditors If The Case Were Not Dismissed Would Be Significant.**

Debtor's real estate holdings are in somewhat of a quagmire in the current chapter 11 proceeding. Debtor believes there is no equity in ten of the thirteen properties, and yet several have been marketed and obtained offers. However, with the recent understanding that the secured liens far exceed the fair market value on most of these properties, Debtor is unable to sell the properties without cooperation from any sold-out liens and without court approval. If the case is not dismissed, the senior lenders will continue to accrue interest (often at very high rates, up to 30% APR) and the junior lenders will potentially lose equity in a future foreclosure or short sale. The Properties are also subject to market conditions in a volatile economy. Dismissal of this case would allow secured creditors to more efficiently liquidate the Properties and would afford all creditors, including unsecured creditors, immediate access to any remedies available under California law.

### D. **Debtor Will Become Current on Operating Reports and UST Compliance No Later Than 2/15/2016 and Will Pay All United States Trustee Fees as a Condition of Dismissal.**

Debtor will have all monthly operating reports completed and filed no later than February 15, 2016, so that interested parties may review and make an informed decision regarding this Motion. In addition, Debtor anticipates filing several amended schedules in response to United States Trustee inquiries at the prior meeting of creditors. These will also be completed and filed no later than February 15, 2016. Debtor will be current on all UST Fees as a condition of

dismissal. Finally, Debtor will work with all creditors to seek resolution to this Motion and believes that all creditors will support this Motion to Dismiss.

### IV. CONCLUSION

For the foregoing reasons, Debtor and Debtor-in-Possession SS Dreambuilders respectfully requests that this Court grant an Order dismissing its Chapter 11 bankruptcy case, and for any such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED          LAW OFFICES OF ANDREW A. MOHER

Dated: February 5, 2016          By: /s/ Andrew A. Moher
                                 Andrew A. Moher, Attorney for Debtor

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | **Exhibit "A"** |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

| ASSET (OR PROPERTY) | FAIR MARKET VALUE | LIABILITIES/SECURED LIENS | NET EQUITY |
|---|---|---|---|
| 1924-1928 E.28th St | $680,000 (proposed sale price) – currently two APN and two legal properties but in process of mapping to consolidate into one legal unit. Costs involved in finalizing consolidation are approx. $20,000 - mapping has not yet obtained final approval. | Minimum loan amount per secured creditor's counsel = $756,000 (plus compound interest and penalties). Approximate current payoff = $800,000 | No equity or value to estate.<br><br>(approx. equity position = -$120,000) |
| 1068 Cragmont Ave | Offer accepted at $1,549,000.00 | Total encumbrances per estimated closing statement (Core Escrow) are $1,875,927.35 | No equity or value to estate.<br><br>(approx. equity position = -$326,927.35) |
| 361 Upper Terrace | Approx. $3.5 million in current condition. Was listed for $3.995m for months with no interest. | $4,391,263.77 plus post-petition fees and costs (see statement of non-opposition, doc #93). Relief From Stay has been granted. | No equity or value to estate.<br><br>(approx. equity position = -$891,263.77) |
| 639 Grand View Ave | Offer accepted at $3 million. | $3,090,901.10 (per payoff demands from lenders) | No equity or value to estate.<br><br>(approx. equity position = -$90,901.10) |
| 615 Missouri St | Approx "as-is" value = $1.7m (in middle of construction and no funds available for completion) – comparison value via Zillow (based on good condition comps) = $1.89m | Approximately $1.7m (no lenders filed proofs of claim, estimate based on initial loan amounts plus interest and fees) | No equity or value to estate.<br><br>(approx. equity position = $0)<br><br>More information can be provided to interested parties upon request. It appears there is no possibility of sale for profit in current condition and after costs of sale. |

| | | | |
|---|---|---|---|
| 17872 Almond Rd | Offer accepted at $700,000.00 | $809,955.51 (per estimated closing statement – Core Escrow) | No equity or value to estate.<br><br>(approx. equity position = $-109,955.51) |
| 7039 Broadway Terrace | Listed for $499,000 (estate is 50% owner) | Approx. $240,000 (demand from first lender - $218,152.08 as of 1/31/16) and property taxes | Proceeds after approx. 8 percent cost of sale = $459,080 (contingent on offer obtained at list price.)<br><br>Value to estate (contingent on accepted offer at list price) = $109,540 |
| 3058 E. 7th St | Listed at $550,000 (estate is 50% owner with managing member's husband) | Approx. $531,610 (based on loan estimates and proofs of claim) | No equity or value to estate. Proceeds after approx. 8 percent cost of sale = $506,000 (contingent on offer obtained at list price.)<br><br>Value to estate (contingent on accepted offer at list price) = $0 (equity position = - $25,610 |
| 811-815 61st St | Offer accepted at $650,000.00 | $750,245.30 (per estimated closing statement – Core Escrow) | No equity or value to estate.<br><br>(approx. equity position = - $100,245.30) |
| 5027-5033 Bancroft Way | Offer accepted at $450,000.00 | $482,687.73 (per estimated closing statement – Core Escrow) – note: includes $75,000 demand from judgment creditor Steve Yates – maybe avoidable as preference as recorded within 90 days of bankruptcy filing. (would result in $407,687.73 payoff) | As is, no equity or value to estate.<br><br>If judgment lien avoided and offer retained, value to estate = $42,312.27 minus costs of resolution. |

| | | | |
|---|---|---|---|
| 20266, 20268, 20276 Concord Ave | $677,979.00 (estimate per Zillow, not listed or on market) – 8% cost of sale = $623,740.68 | $505,263.40 ($395,263.40 (per proof of claim and approximate 2nd lien of $110,000)) | Value to estate = $118,477.28 |
| 4452 Mattis Ct | $70,000 (was sold pre-petition but title not transferred) – estate is 50% owner | None | Value to estate = $35,000 but funds were paid pre-petition outside of escrow; closing was not completed due to inadvertent failure to record. |
| 1805 Estudillo St | $425,000 (estimate per Debtor's Realtor – Zillow estimate at $389,295) – not listed or on market) | Approximately $250,000 | Estimated proceeds (if sold at estimated price) = $425,000 – 8 % cost of sale = $391,000. Value to estate = approximately $141,000. |
| Cash on Hand | $18,787 (per current schedules) – will likely be amended after filing of current operating report. | n/a | $18,787 |
| Accounts Receivable | $297,000 (per schedules) – successful collections unlikely | n/a | $0 (cost of collection likely outweighs collectible amounts) |
| Vehicles | $30,301 | $0 | Approx. $20,000 after costs of sale. |
| Claims Against Buildzig, Inc. | Contingent – Debtor had estimated at $1 million. However, settlement attempts have not been successful and it appears recovery is not guaranteed and may not exceed costs of representation/litigation | n/a | Contingent/unclear. No likely recovery in short-term. |

ANDREW A. MOHER. SBN: 257605
LAW OFFICES OF ANDREW A. MOHER, APC
101 California St, Suite 2710
San Francisco, CA 94111
Telephone: 415-365-9626
Facsimile: 619-923-3303
Proposed Attorney for Debtor SS Dreambuilders, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

In Re:

SS Dreambuilders, LLC

Case No. 15-43052

CHAPTER 11

**DECLARATION OF CHONG S. HAN IN SUPPORT OF MOTION TO DISMISS CASE**

Judge: Hon. Roger L. Efremsky

I, CHONG S. HAN, hereby declare:

1. I am the 100 percent owner and managing member of SS Dreambuilders LLC. I have applied to this Court to be appointed the responsible individual, and my application has been granted by the Court.
2. I have personal knowledge of the facts contained in this Declaration, except as to any matters alleged upon information and belief and as to those matters I believe them to be true. If called as a witness, I could and would testify thereto.
3. I have reviewed the motion to dismiss in detail and all statements and facts are true and correct to the best of my knowledge.
4. I filed this bankruptcy case with multiple foreclosures pending and with the intent to reorganize SS Dreambuilders LLC and to pay back debts owed to my creditors.

DECLARATION

5. Unfortunately, I realized during this case that many of the numbers I believed to be true were not correct. Specifically, myself and my accountant had not incorporated interest and fees into my secured loan totals, and the amounts that I thought I owed on the properties were often far less than I truly owed.

6. I am aware that Daniel Kim is the largest creditor, and by far the largest unsecured creditor in my case. Mr. Kim and I have worked together and invested together many times in the past. Mr. Kim and SS Dreambuilders both profited from investments in the past where properties were titled in SS Dreambuilders' name. I believe that I have defenses and/or potential counterclaims against Mr. Kim that may offset any liability on these deficiency judgments. However, I am also actively working with my creditors to maintain good relationships for the future and believe that Mr. Kim will support dismissal of this case.

7. I am aware that SS Dreambuilders needs to complete the operating reports and all corrections from the United States Trustee attorney at the meeting of creditors, and will do so no later than February 15, 2016.

8. I am aware that SS Dreambuilders needs to pay all United States Trustee fees due as a condition of dismissal.

9. I believe that the creditors of SS Dreambuilders would prefer dismissal to conversion and would benefit further from dismissal.

10. I have reviewed the Exhibit "A" to the Motion to Dismiss in detail and am confident that it represents a true and correct summary of SS Dreambuilders current assets.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed this 8th day of February, 2016, at Oakland, California.

Chong S. Han, Managing Member
SS Dreambuilders LLC